IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT KNOXVILLE
Assigned on Briefs August 20, 2002

## STATE OF TENNESSEE v. ERWIN SCOTT PATTERSON

**Appeal from the Criminal Court for Hamilton County**
**No. 235211      Stephen M. Bevil, Judge**

**No. E2001-02652-CCA-R3-CD**
**October 4, 2002**

The defendant, Erwin Scott Patterson, entered pleas of guilt to three counts of vehicular assault, reckless endangerment, and violation of the driver's license law.  A charge of driving under the influence of an intoxicant was dismissed.  The trial court imposed a sentence of four years for one count of vehicular assault, two years for the remaining vehicular assault convictions, two years for reckless endangerment, and 30 days for violation of the driver's license law.  An application for alternative sentencing was denied.  In this appeal, the defendant contends that the four-year sentence for vehicular assault was excessive and that the trial court erred by denying an alternative sentence. The judgments are affirmed as modified.

**Tenn. R. App. P. 3; Judgments of the Trial Court Affirmed as Modified**

GARY R. WADE, P.J., delivered the opinion of the court, in which JAMES CURWOOD WITT, JR., and ROBERT W. WEDEMEYER, JJ., joined.

Ardena J. Garth, Public Defender (on appeal), Donna Robinson, Assistant Public Defender (on appeal), and Myrlene Marsa and Christian J. Coder, Assistant Public Defenders (at trial), for the appellant, Erwin Scott Patterson.

Paul G. Summers, Attorney General & Reporter; Kathy D. Aslinger, Assistant Attorney General; and Thomas E. Kimball, Assistant District Attorney General, for the appellee, State of Tennessee.

### OPINION

On the night of November 19, 2000, the defendant, who had been drinking at the Governor's Lounge in Chattanooga, drove his vehicle onto Bonny Oaks Drive at speeds in excess of 70 miles per hour and passed a vehicle driven by Sherry Wilson.  While in the wrong lane of traffic, the defendant sideswiped a car driven by Meredith Stalyon and occupied by Ashley Hobbs.  His automobile then struck head-on a vehicle driven by Dustin Norman, age 22.  The defendant and Norman were seriously injured.  Norman suffered broken feet, a broken elbow, and crushed hips, which required reconstruction.  His spleen and liver were lacerated, causing a loss of 75% of his blood.  Norman's face was crushed from his chin to his eye sockets.  By the time of the sentencing

hearing, he had undergone six different surgeries and faced three more operations for reconstruction and bone grafting of his face. His college education was interrupted and medical bills, only some of which were paid by insurance, had accumulated to approximately $200,000.00. Norman's father is disabled and his mother, who provided care for the victim, missed a considerable amount of time from her work. The amount of the medical bills, which were in Ms. Norman's name, resulted in her filing bankruptcy.

The probation officer reported that the defendant, 23 years old at the time of the crimes, had graduated from high school in 1995. Divorced, the defendant had joint custody with his ex-wife of two children, ages two and three and a half. He had a blood alcohol level of .23 at the time of the accident and tested positive for benzodiazepines. By the time of the hearing, the defendant had been employed as a cook for four and a half months at a restaurant. The defendant was current in child support payments. The defendant suffered a concussion, a broken collar bone, a broken sternum, fractures to the ribs on his left side, a lung puncture, a broken right arm, a broken foot, and several lacerations in the accident. The severity of the injuries to his left arm had prevented him from continuing his employment as a welder.

About three and one-half months after the offenses, the defendant pled guilty to 14 counts of passing worthless checks and was ordered to pay restitution in the approximate sum of $3,000.00. At the time of the sentencing hearing, he had timely made payments in accordance with the order. He had no other criminal convictions. The defendant made the following statement to the probation officer:

> I take full responsibility for the accident. When I got into my car that night, I did not feel intoxicated, but I was too sleepy to be driving. In my opinion, that is just as bad as being drunk.

At the conclusion of the hearing, the trial court found only one enhancement factor applicable, that the injuries to the victim were particularly great. See Tenn. Code Ann. § 40-35-114(6). It concluded that the family and community support for the defendant qualified as a mitigating factor under Tennessee Code Annotated § 40-35-113(13). Because the trial court determined that the mitigating factor was far outweighed by the seriousness of the injuries to the victim, it imposed a four-year sentence, the maximum within the range. At a hearing on a motion to reconsider, the state conceded that the trial court erroneously applied Tennessee Code Annotated § 40-35-114(6). Because the personal injuries suffered by the victim were an element of the offense of vehicular assault, the state acknowledged that the enhancement factor could not be applied. See State v. Williamson, 919 S.W.2d 69, 82 (Tenn. Crim. App. 1995) (citing State v. Jones, 883 S.W.2d 597, 602 (Tenn. 1994)). The trial court declined to modify the sentence on the basis that the defendant had failed to comply with the terms of his release by passing worthless checks. See Tenn. Code Ann. § 40-35-114(13). The defendant argues that the four-year sentence for the vehicular assault of Dustin Norman was excessive and that, in any event, he should have been granted probation or a sentence of split confinement. The defendant also asserts that the trial court should have applied an additional mitigating factor: that the defendant committed the offense under such

unusual circumstances that it is unlikely that a sustained intent to violate the law motivated his conduct.  See Tenn. Code Ann. § 40-35-113(11).

The state submits that the four-year sentence is warranted because the defendant qualified as having a previous history of criminal convictions or criminal behavior in addition to those necessary to establish the appropriate range, an enhancement factor under Tennessee Code Annotated § 40-35-114(1).  Because the defendant had 14 misdemeanor convictions for passing worthless checks totaling $3,281.02 by the time of the sentencing hearing, the state contends that the enhancement factor should be given considerable weight, thereby warranting the maximum possible sentence for the Norman vehicular assault.  The state does not argue that the defendant had failed to comply with the terms of his release on bail.

When there is a challenge to the length, range, or manner of service of a sentence, it is the duty of this court to conduct a de novo review with a presumption that the determinations made by the trial court are correct.  Tenn. Code Ann. § 40-35-401(d).  This presumption is "conditioned upon the affirmative showing in the record that the trial court considered the sentencing principles and all relevant facts and circumstances."  State v. Ashby, 823 S.W.2d 166, 169 (Tenn. 1991); see State v. Jones, 883 S.W.2d 597, 600 (Tenn. 1994).  "If the trial court applies inappropriate factors or otherwise fails to follow the 1989 Sentencing Act, the presumption of correctness falls."  State v. Shelton, 854 S.W.2d 116, 123 (Tenn. Crim. App. 1992).  The Sentencing Commission Comments provide that the burden is on the defendant to show the impropriety of the sentence.  Tenn. Code Ann. § 40-35-401, Sentencing Commission Comments.

Our review requires an analysis of (1) the evidence, if any, received at the trial and sentencing hearing; (2) the presentence report; (3) the principles of sentencing and the arguments of counsel relative to sentencing alternatives; (4) the nature and characteristics of the offense; (5) any mitigating or enhancing factors; (6) any statements made by the defendant in his own behalf; and (7) the defendant's potential for rehabilitation or treatment.  Tenn. Code Ann. §§ 40-35-102, -103, -210; State v. Smith, 735 S.W.2d 859, 863 (Tenn. Crim. App. 1987).

In calculating the sentence for a Class B, C, D, or E felony conviction, the presumptive sentence is the minimum in the range if there are no enhancement or mitigating factors.  Tenn. Code Ann. § 40-35-210(c).  If there are enhancement but no mitigating factors, the trial court may set the sentence above the minimum, but still within the range.  Tenn. Code Ann. § 40-35-210(d).  A sentence involving both enhancement and mitigating factors requires an assignment of relative weight for the enhancement factors as a means of increasing the sentence.  Tenn. Code Ann. § 40-35-210(e).  The sentence must then be reduced within the range by any weight assigned to the mitigating factors present.  Id.

Especially mitigated or standard offenders convicted of Class C, D, or E felonies are, of course, presumed to be favorable candidates "for alternative sentencing options in the absence of evidence to the contrary."  Tenn. Code Ann. § 40-35-102(6).  With certain statutory exceptions, none

of which apply here, probation must be automatically considered by the trial court if the sentence imposed is eight years or less. Tenn. Code Ann. § 40-35-303(b) (Supp. 2000).

Among the factors applicable to probation consideration are the circumstances of the offense, the defendant's criminal record, social history and present condition, and the deterrent effect upon and best interest of the defendant and the public. State v. Grear, 568 S.W.2d 285, 286 (Tenn. 1978). The nature and circumstances of the offenses may often be so egregious as to preclude the grant of probation. See State v. Poe, 614 S.W.2d 403, 404 (Tenn. Crim. App. 1981). A lack of candor may also militate against a grant of probation. State v. Bunch, 646 S.W.2d 158, 160 (Tenn. 1983).

Our review must be de novo without a presumption of correctness. The trial court incorrectly relied upon Tennessee Code Annotated § 40-35-114(6), that the injuries inflicted upon the victim were particularly great. The state concedes in this appeal that because the injuries qualify as an element of the offense of vehicular assault, that the injuries were particularly great may not be utilized as an enhancement factor. Further, the apparent reference to Tennessee Code Annotated § 40-35-114(13), that the felony was committed while the defendant was on bail for the felony charge, would not be applicable because, as indicated, the defendant had apparently written the checks prior to the accident, even though the warrants were issued afterward. According to the testimony of the defendant, he had written the checks in Alabama prior to the time he was hospitalized and "they were clearing while I was out of work."

In this appeal, the defendant argues that the prior criminal history enhancement factor should not be applied because the convictions did not occur until after the date of the offense and because "the checks only became worthless [when he] did not receive his paycheck while in the hospital and then was unable to work for a long period of time due to his own extensive injuries."

If the checks were written prior to the accident without sufficient funds in his account, that would qualify, in our view, as criminal behavior and Tennessee Code Annotated § 40-35-114(1) would apply. That the warrants were issued afterward would not make a difference. Furthermore, any criminal behavior occurring prior to the sentencing hearing may be considered as an enhancement factor whether the criminal behavior occurred before or after the commission of the offense. This court so decreed in State v. Burl Jarrett, No. 02C01-9710-CC-00418 (Tenn. Crim. App., at Jackson, Aug. 21, 1998), and State v. John Allen Chapman, No. 01C01-9604-CC-00137 (Tenn. Crim. App., at Nashville, Sept. 30, 1997). In summary, the trial court could have applied prior criminal history as an enhancement factor.

All of the defendant's prior offenses were misdemeanors which resulted in suspended sentences and orders of restitution. Because the testimony at trial established that the defendant was current in all orders of restitution and also in his child support payments, this court will not give great weight to Tennessee Code Annotated § 40-35-114(1). It is arguable, at least, that no warrants would have been issued had the defendant not been out of work due to his own injuries. Parenthetically speaking, this court would observe that a maximum sentence would have been entirely appropriate if the severity of the injuries to Norman could have been considered. Because,

however, this factor may not be considered and because the defendant's prior criminal behavior should be given lesser weight, this court, in consideration of the mitigating factor found applicable by the trial judge, can add only one year to the two-year presumptive sentence. This court rejects the defendant's claim that the offense was committed under such unusual circumstances that it is unlikely that a sustained intent to violate the law motivated his conduct. See Tenn. Code Ann. § 40-35-113(11). There is little proof on his claim, but the amount of time the defendant spent consuming alcohol prior to operating his vehicle suggests that his choice to drive was not a spontaneous act. Even if that mitigating factor were applicable, this court would not lessen the sentence on that ground. Accordingly, this court must modify the sentence for vehicular assault from four to three years.

Next, the defendant contends that the trial court should have granted an alternative sentence. The defendant points to a reported case in which one convicted of vehicular homicide was granted probation in the trial court. He argues that a sentence of split confinement, intensive supervised probation, mandatory counseling, and extended community service was a reasonable alternative given his remorse and his potential for rehabilitation or treatment.

While the defendant is presumed to be a favorable candidate for an alternative sentence in the event of evidence to the contrary, it is evident in this instance that confinement is necessary to avoid depreciating the seriousness of the offense. "Each case must be bottomed upon its own facts." State v. Taylor, 744 S.W.2d 919, 922 (Tenn. Crim. App. 1987). The trial court specifically determined that the defendant had demonstrated a flagrant disregard for the safety of others by operating his vehicle at a high rate of speed while having an unusually high blood alcohol content. The consequences were devastating, especially for Norman. In our view, the proof established that the defendant drove his vehicle at a high rate of speed on the wrong side of the road. He passed one vehicle and sideswiped another before striking Norman's vehicle head-on. The record establishes that the injuries suffered by the victim were extensive, of a permanent nature, and required a substantial amount of medical care and treatment. In our view, the trial court properly denied the alternative sentence.

Accordingly, the sentence for the vehicular assault of Dustin Norman is modified from four to three years; otherwise, the judgments are affirmed.

_____
GARY R. WADE, PRESIDING JUDGE